# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL NEIL JACOBSEN,<br><br>        Plaintiff,<br><br>v.<br><br>PEOPLE OF THE STATE OF CALIFORNIA, et al.,<br><br>        Defendants. | Case No. 1:14-cv-00108-JLT (PC)<br><br>**ORDER GRANTING SERGEANT DIAZ AND OFFICER BARAJAS' MOTION FOR SUMMARY JUDGMENT**<br><br>**(Docs. 114, 116)**<br><br>**ORDER DIRECTING CLERK TO CLOSE ACTION** |

## I.     Procedural History

Plaintiff claims that, while he was confined at the Fresno County Jail, Defendants Sergeant Diaz and Officer Barajas subjected him to excessive force in two different instances; and that Sergeant Diaz was deliberately indifferent to Plaintiff's serious medical needs, retaliated against Plaintiff, and interfered with Plaintiff's right of access to the courts.  Defendants contend that Plaintiff cannot prove the elements of his claims against them and failed to exhaust available administrative remedies on his claims as well, entitling them to summary judgment.[1]  For the reasons discussed below, the Court finds that Defendants' motion should be **GRANTED**.

## II.     Plaintiff's Claims

The events giving rise to this action occurred during Plaintiff's stay at the FCJ from December 25, 2013 through May 13, 2014.

---

[1] Though two entries appear on the docket, Defendants filed one motion, Doc. 114, and a separate notice of motion, Doc. 116.

1

## A.    Sergeant Diaz

Plaintiff is proceeding on four claims against Sergeant Diaz for:  (1) use of excessive force on December 25, 2013 in violation of the Eighth Amendment; (2) preventing Plaintiff from receiving medical care for the injuries he allegedly sustained on December 25th, in violation of the Eighth Amendment; (3) denial of access to the courts in violation of the First Amendment; and (4) retaliation in violation of the First Amendment.  (Doc. 17.)[2]

## B.    Officer Barajas

Plaintiff is proceeding against Officer Barajas for use of excessive force on March 11, 2014 in violation of the Eighth Amendment and retaliation in violation of the First Amendment. (Doc. 17.)

## III.   Summary Judgment Standard

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011).  An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.,* 818 F.2d 1422, 1436 (9th Cir. 1987).  The Court determines only whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a *pro se* prisoner.  *Thomas v. Ponder*, 611 F3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

In addition, Rule 56 allows a court to grant summary adjudication, or partial summary judgment, when there is no genuine issue of material fact as to a particular claim or portion of that claim.  Fed. R. Civ. P. 56(a); *see also Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . .") (internal quotation marks and citation omitted).  The

---

[2] Though issued before Defendants had appeared and consented to Magistrate Judge jurisdiction, the screening order, which found these claims cognizable, did not dispose of any claims Plaintiff raised in the SAC.  *See Williams v. King*, --- F.3d ----, No. 15-15259, 2017 WL 5180205 (9th Cir. Nov. 9, 2017).

standards that apply on a motion for summary judgment and a motion for summary adjudication are the same. *See* Fed. R. Civ. P. 56 (a), (c); *Mora v. Chem-Tronics*, 16 F.Supp.2d 1192, 1200 (S.D. Cal. 1998).

Each party's position must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo County, Ariz.,* 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendant does not bear the burden of proof at trial and, in moving for summary judgment, need only prove an absence of evidence to support Plaintiff's case. *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If Defendant meets the initial burden, it then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp.,* 627 F.3d at 387 (citing *Celotex Corp.,* 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).

In judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, *Soremekun v. Thrifty Payless Inc.,* 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, *Comite de Jornaleros de Redondo Beach v.*

*City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), *cert. denied*, 132 S.Ct. 1566 (2012). Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

Plaintiff was provided timely notice of the requirements for opposing a motion for summary judgment in an order that issued on June 13, 2017. *Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012), *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003), *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988). That notice specifically stated that, if Plaintiff failed to contradict Defendants' motion with declarations or other admissible evidence, Defendants' evidence will be taken as truth. (Doc. 119, pp. 2-3.) Despite this, Plaintiff's opposition does not contain any declarations under penalty of perjury, any form of admissible evidence, nor does he refer to any evidence submitted by Defendants to defeat Defendants' motion. (*See* Doc. 131.)

However, a verified complaint, such as Plaintiff's SAC, "may be treated as an affidavit to oppose summary judgment to the extent it is 'based on personal knowledge' and 'sets forth specific facts admissible in evidence.'" *Keenan v. Hall*, 83 F.3d 1083, 1090 n. 1 (9th Cir. 1996) (quoting *McElyea v. Babbitt*, 833 F.2d 196, 197-98 n. 1 (9th Cir. 1987) (per curiam)), *amended by* 135 F.3d 1318 (9th Cir. 1998); *see also Jones v. Blanas*, 393 F.3d 918, 922-23 (9th Cir. 2004); *Lopez v. Smith*, 203 F.3d 1122, 1132 n. 14 (9th Cir. 2000) (en banc); *Schroeder v. MacDonald*, 55 F.3d 454, 460 (9th Cir. 1995); *Lew*, 754 F.2d at 1423. Where, as here, an inmate states that the facts in the complaint are true under penalty of perjury, the pleading is "verified." *Schroeder*, 55 F.3d at 460 n. 10.

///
///
//
//

# IV.  Discussion and Analysis

## A.  The Merits

### 1.  Plaintiff's Claims Against Sergeant Diaz

#### a.  Excessive Force

The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). When a prison security measure is undertaken in response to an incident, the question of whether the measures taken inflicted unnecessary and wanton pain and suffering depends on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 6.

The infliction of pain in the course of a prison security measure "does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied was unreasonable, and hence unnecessary." *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *see also Hudson*, 503 U.S. 1. Prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Whitley* at 321-322 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1970)).

Moreover, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10 (internal quotations marks and citations omitted). Although *de minimis* uses of force do not violate the Constitution, the malicious and sadistic use of force to cause harm always violates the Eighth Amendment. *Id.*; *see also Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries)). "Injury and force [] are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an

excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).

Sergeant Diaz's evidence shows that, on December 25, 2013, there was an incident in the FCJ Main Jail, fourth floor, involving Plaintiff, Sergeant Diaz, and other officers. Plaintiff was wearing an unauthorized eyepatch that was covering a fresh tattoo. The FCJ's medical staff did not provide Plaintiff with the eyepatch. (UMF No. 23.) Pursuant to the FCJ's General Rules of Conduct, any item discovered in the possession of an inmate that is not authorized by FCJ staff is considered contraband. (UMF No. 24.) Sergeant Diaz asked Plaintiff to remove the contraband (eyepatch) and surrender it, but Plaintiff refused. (UMF No. 25.) Due to the safety of staff and other inmates, it was important that Plaintiff surrender the contraband because it could be used as a weapon (strap of the eyepatch could be used to strangle someone) or it could be used to hide drugs or other contraband. (UMF No. 26.) Sergeant Diaz attempted to take the contraband from Plaintiff. (UMF No. 27.) However, Plaintiff resisted and did not allow Sergeant Diaz to take it. (UMF No. 28.) Sergeant Diaz and the other officers used authorized correctional techniques to bring Plaintiff to the floor to handcuff him. (UMF No. 29.) Sergeant Diaz secured Plaintiff's right wrist and applied a rear wristlock and the officers placed Plaintiff in handcuffs. (UMF No. 30.) Sergeant Diaz did not hit or punch Plaintiff in the face; Plaintiff testified at his deposition: "I don't know that I was punched." (UMF No. 31.) Plaintiff was on the ground for a short period of time, approximately one to two minutes. (UMF No. 32.)

Defendant's evidence also shows that Plaintiff was seen by Bruce Welch, R.N. on December 25, 2013 after the alleged incident. Mr. Welch, a third party medical examiner, did not document complaints of right shoulder pain, a black eye, or scrapes and bumps to Plaintiff's forehead. (UMF No. 33.) Plaintiff's medical records indicate that he sustained a right shoulder injury sometime in 2005 or earlier. Plaintiff was diagnosed with calcific tendonitis in his right shoulder in 2006 and x-rays taken at CDCR on September 29, 2014 showed mild degenerative joint disease (arthritis) in Plaintiff's right shoulder. There is no evidence of a severe disease or injury. (UMF No. 34.) It is very common for tendonitis to slowly turn into arthritis. Thus, it

appears Plaintiff's 2006 diagnosis of tendonitis slowly progressed into arthritis as shown in the September 2014 x-rays. (UMF No. 35.) Plaintiff refused physical therapy treatment for the right shoulder. (UMF No. 36.) On July 22, 2014, while incarcerated at CDCR, Plaintiff submitted a health services request form in which he represented that he has an old right shoulder injury that did not occur in FCJ. (UMF No. 37.)

The Court finds that Sergeant Diaz has met his burden to demonstrate the absence of a genuine issue of material fact on Plaintiff's excessive force claim. The burden therefore shifts to Plaintiff to establish that a genuine issue as to any material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of his contention that the dispute exists. Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11; *First Nat'l Bank,* 391 U.S. at 289; *Strong v. France*, 474 F.2d 747, 749 (9th Cir. 1973). Though Plaintiff's opposition is deficient, the SAC is verified (Doc. 16, SAC, p. 10) such that Plaintiff's allegations contained therein may be treated as an affidavit to oppose Defendants' motion for summary judgment. (Doc. 16, p. 10.)

Plaintiff's version of facts presented in the SAC, that Sergeant Diaz ordered his officers to take Plaintiff to the ground, hit Plaintiff in the face, then smashed his head against the floor a number of times after he was in cuffs, present a triable issue of fact to defeat summary judgment. Though Defendants present evidence that Plaintiff testified in his deposition that he did not know whether Sergeant Diaz punched him, Defendant does not present evidence of any admission by Plaintiff contrary to his allegation that his head was smashed against the floor a number of times after he was placed in cuffs -- which in and of itself would suffice for an excessive force claim. Further, summary judgment is rarely appropriate on excessive force claims. "Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos v.*

*Gates*, 287 F.3d 846, 853 (9th Cir. 2002); *see also Liston v. County of Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997) (as amended) ("We have held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury."). Thus, the Court finds that a dispute of fact exists upon which Defendants' motion for summary judgment should be **DENIED** on the merits of Plaintiff's excessive force claim against Sergeant Diaz.

### b.      Deliberate Indifference to Serious Medical Needs

"Denial of medical attention to prisoners constitutes an [E]ighth [A]mendment violation if the denial amounts to deliberate indifference to serious medical needs of the prisoners." *Toussaint v. McCarthy* 801 F.2d 1080, 1111 (9th Cir. 1986) *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995) (citing *Estelle*, 429 U.S. at 104-05); *see also Jett v. Penner,* 439 F.3d 1091, 1096 (9th Cir. 2006); *Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002); *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002); *Lopez v. Smith* 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc); *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) *McGuckin* 974 F.2d at 1059. Delay of, or interference with, medical treatment can also amount to deliberate indifference. *See Jett*, 439 F.3d at 1096; *Clement*, 298 F.3d at 905; *Hallett*, 296 F.3d at 744; *Lopez*, 203 F.3d at 1131; *Jackson*, 90 F.3d at 332; *McGuckin* 974 F.2d at 1059; *Hutchinson v. United States,* 838 F.2d 390, 394 (9th Cir. 1988).

Where the prisoner is alleging that delay of medical treatment evinces deliberate indifference, however, the prisoner must show that the delay led to further injury. *See Hallett*, 296 F.3d at 745-46; *McGuckin* 974 F.2d at 1060; *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir.1985) (*per curiam*). Mere delay of surgery, which did not cause harm, is insufficient to state a claim of deliberate medical indifference, and Plaintiff will "have no claim for deliberate medical indifference unless the denial was harmful." *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir.1985) (*per curiam*) citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

/ / /

/ /

Sergeant Diaz presents evidence that FCJ Medical Services has the responsibility for the overall administration of the medical clinics in the FCJ facilities, not correctional staff. (UMF Nos. 55-56.) Correctional staff, including Sergeant Diaz, is not allowed to advise FCJ medical staff on how to provide medical treatment to inmates and are not directly involved in inmates' medical care. (UMF No. 60, 62-63.) Inmate Health Care Services Request forms ("medical request form") and medical grievances are reviewed by FCJ medical staff, not by correctional staff. (UMF Nos. 58, 67.)

During the relevant time period, Plaintiff submitted thirty-seven medical request forms. (UMF No. 57.) Plaintiff was seen by FCJ medical staff on the following dates: December 25, 2013, January 31, 2014 (regarding chronic right shoulder pain), April 16, 2014 (regarding chronic right shoulder pain, and alleged fractures to his left hand and right jaw/cheekbone), and April 25, 2014 (regarding chronic right shoulder pain). (UMF Nos. 33, 49-52, 64.) Plaintiff was also routinely prescribed medication for his pain. (UMF No. 65.)

Furthermore, during the relevant time period, Plaintiff submitted six medical grievances, all of which were reviewed by the Grievance Nurse, Manuel Amparano, R.N. During Nurse Amparano's interview, Plaintiff did not complain that Sergeant Diaz was preventing him from receiving medical care. (UMF Nos. 15, 68-73, 75.) Sergeant Diaz did not have any involvement in reviewing Plaintiff's medical grievances. (UMF No. 74.)

The Court finds that Sergeant Diaz has met his burden to demonstrate the absence of a genuine issue of material fact on Plaintiff's claim that he was deliberately indifferent to Plaintiff's serious medical needs. The burden therefore shifts to Plaintiff to establish that a genuine issue as to any material fact exists. *See Matsushita,* 475 U.S. at 586. In the SAC, Plaintiff alleges that as a result of Sergeant Diaz's interference with his medical appeals and medical treatment, Plaintiff's teeth are still loose on the right upper side where his jaw was fractured; he suffers from migraine headaches and dizzy spells without his eye patch because his right eye is "light sensitive;" he "split" his head on a locker due to a dizzy spell because he did not have his eye patch; and he never received "treatment for the fractures and torn shoulder which to this day

9

cause pain." (Doc. 16, p. 6.) However, Plaintiff's allegations provide no basis to find that he has any medical training for the Court to accept his opinion as to the cause of his complaints, and the Court finds none.

Thus, the Court finds that Defendants' motion for summary judgment should be **GRANTED** on the merits of Plaintiff's claim against Sergeant Diaz for deliberate indifference to his serious medical needs.

### c.     Access to the Courts

Inmates have a fundamental constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996); *Silva v. Di Vittorio*, 658 F.3d 1090, 1101 (9th Cir. 2011); *Phillips v. Hust*, 588 F.3d 652, 655 (9th Cir. 2009). Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim). *Christopher v. Harbury,* 536 U.S. 403, 412-15 (2002).

In either instance, "the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354. Inmates do not enjoy a constitutionally protected right "to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Id.* at 355. Rather, the type of legal claim protected is limited to direct criminal appeals, habeas petitions, and civil rights actions such as those brought under section 1983 to vindicate basic constitutional rights. *Id.* at 354 (quotations and citations omitted). "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* at 355 (emphasis in original).

Moreover, when a prisoner asserts that he was denied access to the courts and seeks a remedy for a lost opportunity to present a legal claim, he must show: (1) the loss of a non-frivolous or arguable underlying claim; (2) the official acts that frustrated the litigation; and (3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit. *Phillips v. Hust*, 477 F.3d 1070, 1076 (9th Cir.2007) (citing *Christopher*, 536 U.S. at 413-414,

overruled on other grounds, *Hust v. Phillips*, 555 U.S. 1150 (2009) (reversed and remanded *Phillips v. Hust,* on qualified immunity grounds without change or discussion of elements of access to court claims)).

Sergeant Diaz presents evidence that the FCJ's Policy No. E-340B and the Inmate Handbook state that "[p]ro per inmates who violate facility rules will be subject to disciplinary action which may include restricted access to LexisNexis Kiosk for a designated period of time, not to exceed thirty (30) days. (UMF No. 76.) The Inmate Handbook states that "[a]ll inmates (with the exception of those on discipline or administrative action) have access to telephone use between the hours of 8:00 am and 9:45 pm each day." And "[a]ccess to the telephone may be temporarily withheld as a disciplinary or administrative action." (UMF No. 77.) Pursuant to FCJ Policy No. E-230, inmates, including pro per inmates, on disciplinary status will temporarily lose access to, among other things, telephone calls and the law library. (UMF No. 78.)

During the relevant time period, Plaintiff was found guilty of six rule violations, which resulted in him serving time in disciplinary housing. (UMF Nos. 80-85.) From December 25, 2013 through May 2, 2014, Plaintiff attended approximately seven law library sessions, and was allowed to use the Legal Research Kiosk for a period of two hours per session. (UMF No. 87.) In that same time period, Plaintiff refused to attend his scheduled law library session on approximately seven occasions. (UMF No. 88.) During his deposition, Plaintiff testified that his access to the law library was restored on January 24, 2014. (UMF No. 89.)

Plaintiff submitted five grievances concerning law library and telephone access. They were denied by staff because Plaintiff was on disciplinary status and his access to the law library and telephone were restricted pursuant to FCJ policies. The grievances do not contain allegations against Sergeant Diaz, nor were they denied by Sergeant Diaz. (UMF Nos. 90-94.) On January 6, 2014 and March 12, 2014, Offender Programs Manager, Michelle LeFors, provided Plaintiff with memorandums informing him that because he was placed on disciplinary status he would not be afforded access to the Legal Research Kiosk until he completed 30 days in discipline pursuant to FCJ Policy No. E-340B. (UMF No. 99.)

Plaintiff also filed a grievance claiming that his legal mail was opened outside of his presence. (UMF No. 96.) During his deposition, Plaintiff testified that he does not know who opened his legal mail and, other than his own opinion/suspicion, Plaintiff does not have any evidence that Sergeant Diaz opened his mail. (UMF No. 97.)

From December 25, 2013 through May 13, 2014, Plaintiff filed approximately twenty-six documents, including, but not limited to, motions, jury instructions, and notices of appeal in his underlying criminal case. (UMF No. 100.) On January 23, 2014 and February 10, 13, 14, 18, 2014, Plaintiff's pretrial motions in his underlying criminal case were heard and decided on the merits. (UMF No. 111.)

"Although prison officials may not obstruct a prisoner's access to the courts by unreasonably blocking his access to a law library, prison officials may place reasonable limitations on library access in the interest of the secure and orderly operation of the institution." *Oltarzewski v. Ruggiero*, 830 F.2d 136, 138 (9th Cir. 1987) (citing *Bell v. Wolfish*, 441 U.S. 520, 545-48 (1979)). "[P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis*, 518 U.S. at 351 (internal quotes and citations omitted). Defendants' evidence shows that Plaintiff's alleged inability to access the law library was the result of reasonable limitations placed on Plaintiff's access by FCJ officials in response to Plaintiff's disruptive behavior.

The Court finds that Sergeant Diaz has met his burden to demonstrate the absence of a genuine issue of material fact. The burden therefore shifts to Plaintiff to establish that a genuine issue as to any material fact exists. *See Matsushita*, 475 U.S. at 586. To this end, however, Plaintiff's deposition testimony, cited by Defendants, overrides his allegations in the SAC to the contrary. Plaintiff's general and conclusory allegations in the SAC were very liberally construed in his favor to find his access to courts claim cognizable. However, on summary judgment such general allegations do not suffice to create a triable issue of fact that he had a viable protected claim that he lost, or may not now pursue because of Sergeant Diaz's actions. A court may refuse

to find a "genuine issue as to a material fact where the only evidence presented is uncorroborated and self-serving testimony." *Manley v. Rowley*, 847 F.3d 705, 710-11 (9th Cir. 2017) (internal quotations and citations omitted). Plaintiff's allegations in the SAC are akin to self-serving testimony and the Court is permitted to discount it since the SAC largely "states only conclusions and not facts that would be admissible evidence." *Nigro v. Sears, Roebuck and Co.*, 784 F.3d 495, 497-98 (9th Cir. 2015). Thus, the Court finds that Defendants' motion for summary judgment should be **GRANTED** on the merits of Plaintiff's access to court claim against Sergeant Diaz.

### 2. Plaintiff's Excessive Force Claim Against Officer Barajas

Officer Barajas' evidence shows that on March 10, 2014, Plaintiff was written up for a rule violation for threatening Officer Barajas. (UMF No. 39.) On March 11, 2014, there was an incident in the Main FCJ, fourth floor, involving Plaintiff, Officer Barajas and Corporal Moua in which Plaintiff refused to allow Corporal Moua to conduct a rule violation hearing. (UMF No. 40.) Plaintiff sat on the ground, leaned against the law library door, and refused to get up and go to his cell. (UMF No. 41.) Pursuant to the FCJ's General Rules of Conduct, inmates cannot interfere with the opening or closing of any door or gate. (UMF No. 42.) Officer Barajas grabbed Plaintiff by the jumpsuit and moved him away from the door. (UMF No. 43.) Plaintiff was preventing the officers from handcuffing him. (UMF No. 44.) Officer Barajas placed Plaintiff's right arm behind his back and applied a wristlock to place Plaintiff in handcuffs. (UMF No. 45.) Sergeant Diaz was not present during the incident. Sergeant Diaz responded to the incident after Plaintiff was placed in handcuffs and escorted him to the medical infirmary with Officer Barajas. (UMF No. 46.) Plaintiff was charged with battery upon a custodial officer and resisting a peace officer. (UMF No. 47.) Plaintiff was written up for a rule violation and found guilty for assault on a staff member. (UMF No. 48.)

About a month later, on April 16, 2014, Plaintiff was examined by Monica Choe, R.N. for complaints of an alleged left hand fracture and right jaw/cheekbone fracture and a note of a "bulging bone structure" was most likely a fairly recent contusion where the blood vessel

ruptured or tore which is generally a benign injury that resolves fairly quickly, typically within a week or two.  (UMF No. 49.)  Plaintiff also had right shoulder tenderness upon rotation. Plaintiff's right cheek was negative for tenderness on palpation; Ms. Choe's assessment was acute pain of the left hand and right cheekbone, and chronic pain of the right shoulder; Plaintiff was referred to be seen by a physician; and examination did not reveal any injury to Plaintiff's right jaw.  (UMF No. 50.)  On April 25, 2014, Plaintiff was again seen by Nurse Choe at which time Plaintiff had no complaints of tenderness or discharge, nor did he have complaints of left hand or right jaw pain -- Plaintiff's left hand pain on the 16ht was most likely related to a benign contusion that healed within a week.   (UMF No. 51.)  Plaintiff also complained of right shoulder pain from a rotator cuff injury sustained years ago and Ms. Choe's assessment was that Plaintiff was clinically stable.  (UMF No. 52.)

The Court finds that Officer Barajas has met his burden to demonstrate the absence of a genuine issue of material fact as to Plaintiff's excessive force claim against him.  The burden therefore shifts to Plaintiff to establish that a genuine issue as to any material fact exists.  *See Matsushita,* 475 U.S. at 586.  Plaintiff's version of facts presented in the SAC, that Officer Barajas repeatedly smashed his knee into the back of Plaintiff's head and neck and slammed Plaintiff into the walls as he escorted Plaintiff to medical presents a triable issue of fact to defeat summary judgment.  Though Defendant presents evidence that the force he used on Plaintiff was reasonable.  Plaintiff's allegations are sufficient to present a triable issue of fact as to whether the manner of Defendant's use of force and the amount that Defendant used on March 11, 2014, was repugnant to the conscience of mankind.  *Hudson*, 503 U.S. at 9-10.  Further, though Defendant presents evidence that Plaintiff did not sustain as severe of injuries as alleged in the SAC, this does not negate Plaintiff's excessive force claim against Officer Barajas.  *Wilkins*, 559 U.S. at 38 ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.").  Thus, the Court finds that a dispute of fact exists upon which Defendants' motion for summary judgment should be **DENIED** on the merits of Plaintiff's excessive force claim against Officer Barajas.

### 3. Plaintiff's Retaliation Claim Against Sergeant Diaz & Officer Barajas

Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so. *Waitson v. Carter*, 668 F.3d 1108, 1114-1115 (9th Cir. 2012); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir.2009). A retaliation claim has five elements. *Id.* at 1114.

First, the plaintiff must allege that the retaliated-against conduct is protected. *Id.* The filing of an inmate grievance is protected conduct, *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005), as are the rights to speech or to petition the government, *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). Second, the plaintiff must show the defendant took adverse action against the plaintiff. *Rhodes*, at 567. Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct. *Waitson*, 668 F.3d at 1114. Fourth, the plaintiff must allege that the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Robinson*, 408 F.3d at 568 (internal quotation marks and emphasis omitted). "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," *Brodheim*, 584 F.3d at 1269, that is "more than minimal," *Robinson*, 408 F.3d at 568 n.11. Fifth, the plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution. . . ." *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir.1985).

Defendants' evidence shows that pursuant to FCJ Policy No. E-140 and the Inmate Handbook, staff takes an active role in trying to resolve inmate complaints or problems. If a problem cannot be resolved then an inmate can obtain a grievance form from an officer by submitting an Inmate Request Form. (UMF No. 7.) Officers who accept the completed Inmate Grievance Form are responsible for ensuring that the form is properly completed by the inmate. (UMF No. 113.) As part of their duties, floor officers review inmate grievances to make sure that the issues set forth are cove red by the grievance procedures pursuant to FCJ Policy No. E-140. Officers can consult with an on-duty sergeant to discuss questionable issues (e.g., grievance filed

against court staff, grievance contains multiple unrelated issues). (UMF No. 114.) An inmate can file a grievance concerning any condition of confinement at the FCJ, including, officer conduct. (UMF No. 4.) Any grievance or appeal that does not meet any requirement may be rejected and returned to the inmate without investigation. The Lieutenant determines whether a grievance should be rejected. (UMF No. 115.)

Sergeant Diaz and Officer Barajas contend that they did not take any adverse action against Plaintiff. Sergeant Diaz investigated two out of the twenty-six grievances Plaintiff filed. Sergeant Diaz made the recommendation not to sustain Plaintiff's grievances because they were submitted untimely. Plaintiff appealed the grievances and Sergeant Diaz's recommendation was upheld because the grievances were untimely pursuant to the FCJ's Policy No. E-140. (UMF Nos. 116-117.) Additionally, Sergeant Diaz did not write or send a letter to Plaintiff's sentencing judge. The handwriting on the letter is not Sergeant Diaz's handwriting. (UMF No. 118.) On May 2, 2014, Plaintiff represented to the Fresno County Superior Court that the handwriting on the letter looked like his next door neighbor's handwriting. (UMF No. 119.) The letter did not impact the court's sentencing decision. (UMF No. 120.)

Sergeant Diaz and Officer Barajas did not work at the FCJ twenty-four hours a day, seven days a week. (UMF Nos. 20-21.) During his deposition, Plaintiff testified that "I learned to know when to submit the grievances, at what hour, and what officers to hand them to so they would get turned in." (UMF No. 19.) Plaintiff also testified that he pushed a lot of paperwork and grieved everything. (UMF No. 121.)

The Court finds that Officer Barajas has met his burden to demonstrate the absence of a genuine issue of material fact. It bears repeating that while Plaintiff need only allege facts sufficient to support a plausible claim for relief, the mere possibility of misconduct is not sufficient, *Iqbal*, 556 U.S. at 678-79, and the Court is "not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Defendants' evidence that Plaintiff testified he believed the letter given to his sentencing judge was written by his neighbor sufficiently negates Plaintiff's

allegations that Sergeant Diaz forged that letter in retaliation for Plaintiff's protected conduct. This suffices to show that there is no triable issue of material fact. Thus, the Court finds that Defendants' motion for summary judgment should be **GRANTED** on the merits of Plaintiff's retaliation claim against Sergeant Diaz.

### A. Exhaustion

#### 1. Statutory Exhaustion Requirement

Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any FCJ, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners are required to exhaust available administrative remedies prior to filing suit. *Jones*, 549 U.S. at 211; *McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). Where a prisoner proceeds in an action under § 1983 on an amended complaint, the PLRA is satisfied if the inmate exhausted administrative remedies after the filing of the original complaint, but prior to the filing of the amended complaint. *Rhodes v. Robinson*, 621 F.3d 1002, 1007 (9th Cir. 2010). The key is that the claims must be "new," as in the events giving rise to them did not occur until after the filing of the original complaint, and the precipitating events of the new claim(s) must be related to the events alleged in the original complaint. *Id.* Therefore, where the events a claim is based on occurred before the filing of the original complaint, the claim is not "new" and must have been exhausted before the filing of the original complaint. *Id.*

Inmates are required to "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Inmates must adhere to the "critical procedural rules" specific to CDCR's process. *Reyes v. Smith,* --- F.3d ---, 2016 WL 142601, *2 (9th Cir. Jan. 12, 2016). The exhaustion requirement applies to all suits relating to prison life, *Porter v. Nussle*, 435 U.S. 516, 532 (2002), regardless of the relief both sought by the prisoner and offered by the process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

"Under § 1997e(a), the exhaustion requirement hinges on the "availability' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, --- U.S. ---, 136 S. Ct. 1850, 1858 (June 6, 2016). An inmate is required to exhaust those, but only those, grievance procedures that are "capable of use" to obtain "some relief for the action complained of." *Id.* at 1858-59, citing *Booth v. Churner,* 532 U.S. 731, 738 (2001). However, "a prisoner need not press on to exhaust further levels of review once he has [ ] received all 'available' remedies." *See Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005).

On summary judgment, Defendants must first prove that there was an available administrative remedy which Plaintiff did not exhaust prior to filing suit. *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing *Albino*, 747 F.3d at 1172). If Defendants carry their burden of proof, the burden of production shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Williams*, at 1166. The action should then be dismissed without prejudice. *Jones*, 549 U.S. at 223-24; *Lira v. Herrrera*, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

### 2.     Fresno County FCJ's Administrative Grievance Process

Defendants' evidence shows that during the relevant time period, the FCJ had an established administrative grievance system that was available to all inmates, including Plaintiff. (UMF Nos. 4-13.) The FCJ's grievance process is set forth in the FCJ's Inmate Handbook and Policy No. E-140. As a first step in the process, an inmate is expected to make reasonable attempts to resolve a complaint prior to submitting a grievance. FCJ staff is expected to take an active role in resolving complaints or problems. If problems are unable to be solved informally by staff, then an inmate can obtain a grievance form by submitting an Inmate Request Form. (UMF No. 7.) An inmate can file a grievance concerning any condition of confinement at the

FCJ, including, but not limited to, officer conduct, medical care, legal services and telephone. (UMF No. 4.) Inmates who wish to grieve a condition of confinement may submit an Inmate Grievance Form (J-105) within fourteen (14) days from the date of the incident relating to the grievance. (UMF No. 8.) Grievances shall be investigated and processed for review within a reasonable amount of time after submission, usually within fourteen (14) calendar days. Based upon the findings of the investigation, the investigating staff member shall make a recommendation to either sustain or not sustain the inmate grievance. The grievance along with the recommendation from the investigating staff member shall be reviewed by the Lieutenant or Manager/Supervisor who will make the determination to either sustain or not sustain the grievance. (UMF No. 9.) An inmate who is not satisfied with the response to the grievance may submit an Inmate Grievance Appeal form within five calendar days from the date of receipt. (UMF No. 10.) After an inmate files an appeal, the decision of the Bureau Commander/Medical Director is final and constitutes exhaustion of all remedies within the FCJ. (UMF No. 11.) The FCJ's policy and handbook state that pursuant to the PLRA, inmates must completely exhaust the FCJ's internal grievance and appeals processes prior to filing any complaint with the court. (UMF No. 6.) The inmate grievance process is available to inmates twenty-four hours a day, seven days a week. Thus, inmates can file a grievance or appeal any time of the day, e.g., an inmate could submit a grievance at 2:00 a.m. (UMF No. 12.)

Plaintiff successfully submitted twenty-six grievances, all of which were investigated by FCJ staff, concerning numerous conditions of confinement, including but not limited to, two grievances regarding officer conduct; six medical grievances; two telephone grievances; two legal services grievances; one law library grievance; seven disciplinary grievances; one mail grievance; one commissary grievance; one food grievance; one miscellaneous grievance; and one maintenance grievance. Plaintiff appealed eight of the twenty-six grievances he filed with FCJ. (UMF No. 14.)

### 3.    Defendants' Motion on Exhaustion

Defendants assert that Plaintiff did not exhaust available administrative remedies on any

of the claims against them in this action. (Doc. 114.) However, since Sergeant Diaz and Officer

Barajas are granted summary judgment on the merits of Plaintiff's retaliation claim against them

as well as Plaintiff's medical and access to court's claims against Sergeant Diaz, his exhaustion

efforts on those claims need not be addressed. Only Plaintiff's exhaustion efforts on his claims of

excessive force against Defendants need be addressed.

     In the Second Amended Complaint, Plaintiff alleges that Sergeant Diaz and Officer

Barajas used excessive force against him on December 25, 2013 and March 11, 2014,

respectively. (Doc. 16, pp. 3-4.) However, Defendants' evidence shows that Plaintiff did not

submit any grievances related to either of these alleged incidents. (UMF No. 18.) This meets

Defendants' burden to demonstrate the absence of a genuine issue of material fact as to Plaintiff's

exhaustion efforts pertaining to his excessive force claims against Sergeant Diaz and Officer

Barajas. Though the SAC (Doc. 16) is "verified" and may be considered in opposition to

Defendants' motion, *Schroeder*, 55 F.3d at 460 n. 10, Plaintiff's allegations pertaining to

exhaustion are brief and conclusory. Plaintiff checked the lines to respond in the affirmative that

there is an administrative remedy process available at FCJ, that he filed a grievance on all of the

facts in the SAC, and that the process for each had been completed. (Doc. 16, p. 2.) Then in the

section to explain what happened at each level for his affirmative response, Plaintiff alleged that

his grievances "were never answered or responded to," that they "were intercepted and returned"

to him, or that he never saw them again, and that this is part of the retaliation he suffered which is

part of his claims. On the lines of the form to explain any responses in the negative, Plaintiff

wrote: "I don't know if the process was ever complete or not as I explained above."

     Plaintiff's filings must be liberally construed because he is a *pro se* prisoner, *Thomas v.

Ponder*, 611 F3d 1144, 1150 (9th Cir. 2010), as were his factual allegations on screening.

Further, all inferences must be drawn in the light most favorable to Plaintiff on this issue since he

is the nonmoving party. *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657

F.3d 936, 942 (9th Cir. 2011). However, inferences are not drawn out of the air; the nonmoving

party must produce a factual predicate from which the inference may reasonably be drawn. *See*

*Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).  Plaintiff's allegations in the SAC are insufficient to raise a disputed issue of fact as to whether he submitted grievances for the instances he alleges Sergeant Diaz and Officer Barajas used excessive force against him as well as their loss, destruction, or misplacement by FCJ personnel to have rendered the process effectively unavailable.  *Williams*, 775 F.3d at 1191-92; *Sapp v. Kimbrell*, 623 F.3d 813, 822-23 (9th Cir. 2010).  The exhaustion inquiry is fact-specific and requires consideration of the appeal and the responses thereto.  *Harvey v. Jordan*, 605 F.3d 681, 685 (9th Cir. 2010); *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005); *see also Hash v. Lee*, No. C 08-3729 MMC (PR), 2014 WL 2986486, at *12 (N.D.Cal. Jul. 2, 2014).

Plaintiff's general allegations that he submitted grievances on everything alleged in the SAC which were intercepted and returned to him, or never answered or responded to, such that he never saw them again, are not specific enough to find that he specifically submitted a grievance on either the December 25, 2013 incident against Sergeant Diaz, or the March 11, 2014 incident against Officer Barajas.  Defendants' evidence sufficiently negates Plaintiff's conclusory exhaustion allegations, which establishes that there is no triable issue of material fact.  Thus, the Court finds that Defendants' motion for summary judgment should be **GRANTED** on Plaintiff's excessive force claims against Sergeant Diaz and Officer Barajas for Plaintiff's failure to exhaust administrative remedies thereon prior to initiating suit.  Since summary judgment is being granted on all of Plaintiff's claims against Sergeant Diaz and Officer Barajas, their request for qualified immunity need not be addressed.

**V.    Order**

Accordingly, the motion for summary judgment, filed May 22, 2017, by Sergeant Diaz and Officer Barajas (Docs. 114, 116) is **GRANTED**;

1.    Plaintiff's claim of deliberate indifference to his serious medical needs in violation of the Eighth Amendment against Defendant Sergeant Diaz is **DISMISSED with prejudice**;

2.    Plaintiff's claim of interference with his access to the courts in violation of the

1  First Amendment against Defendant Sergeant Diaz **is DISMISSED with**

2  **prejudice**;

3  3.  Plaintiff's claims of retaliation for his protected conduct in violation of the First

4  Amendment against Defendants Sergeant Diaz and Officer Barajas is

5  **DISMISSED with prejudice**;

6  4.  Plaintiff's excessive force claims against Defendants Sergeant Diaz and Officer

7  Barajas are **DISMISSED without prejudice** based on Plaintiff's failure to exhaust

8  available administrative remedies prior to filing suit; and

9  5.  The Clerk of the Court is directed to close the action and enter judgment in

10  Defendants' Sergeant Diaz and Officer Barajas favor and against Plaintiff.

12  IT IS SO ORDERED.

13  Dated:   **December 1, 2017**          **/s/ Jennifer L. Thurston**

14  UNITED STATES MAGISTRATE JUDGE